[Crim. No. 7787.   Second Dist., Div. Three.   Dec. 6, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS GUERRERO, Defendant and Appellant.

Louis Guerrero, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

THE COURT.—In a nonjury trial in which he was represented by the public defender, Louis Guerrero was convicted of the possession of heroin. Two prior felony convictions were alleged and established by the evidence and judgment.

Defendant filed in propria persona his notice of appeal from the judgment. He applied for appointment of counsel on the appeal which we denied because our review of the record disclosed that the appeal is without merit. Defendant was notified and given ample time to file a brief. None has been filed. However, we have given the appeal full consideration.

There was evidence of the following facts. During the month of August 1960, a confidential informant, identified as Mary Lopez, informed Officers Dorrell and Fesler that Olivia Guerrero was living at 132 North Almar Street, that Louis Guerrero was selling narcotics and that she thought Olivia, his wife, was holding a main "stash" at that location. This informant on several prior occasions had furnished information that had led these officers to suspects who were proved to be dealing in narcotics.

On September 2, 1960, Officers Fesler and Dorrell went to the address, entered the house and found Olivia in her bedroom. She admitted using narcotics, and her arms had what appeared to be hypodermic needle marks. She said she was getting narcotics from Louis; Louis was selling narcotics for Tony Monco and they were planning a trip to Mexico to get another supply. The narcotics were brought to a motel where they would be cut. Olivia offered to call the officers and tell them what motel would be used but neglected to do so. Later Mary Lopez told the officers that Louis was still selling narcotics; that people would call him on the phone at Olivia's

house, Louis would meet them, receive the money, he would get the narcotics from the house and make the delivery.

Thereafter the officers saw defendant's car about a block from his wife's residence. Officer Salagi knocked on the door and asked Olivia's 12-year-old daughter if they could talk to her mother. She said "Yes, come in."

Officer Dorrell went to the bedroom, opened the door and saw Olivia and Louis standing with their backs toward him. In Louis' right hand was a medicine dropper with a hypodermic needle attached to it, common narcotic paraphernalia. Officer Dorrell reached for the paraphernalia, a struggle ensued, the needle was taken from Louis and both he and Olivia were handcuffed and arrested. In a search the officers found three spoons with heroin residue in their bowls and their underneath sides blackened, such as are commonly used to heat narcotics. They also found a quantity of white powder in a rubber container which was proved to be heroin.

Officer Dorrell testified that defendant, after several minutes of questioning, admitted having purchased the heroin and that he was getting ready to take a "fix." At the trial Louis denied making such an admission.

Defendant was represented by Deputy Public Defender Kilbride and received at his hands a vigorous and able defense. He objected to the introduction of the evidence of the narcotics and paraphernalia upon the ground that the actions of the officers were without probable cause. They had entered the Guerrero home the first time in reliance upon the information received from Mary Lopez. When she was named as the informant defendant's attorney requested an opportunity to locate her, although he stated he could not assure the court that she would be called as a witness if she should be located. The trial was continued from March 9th to April 11th. The officers were instructed that they should, and they agreed that they would endeavor to locate the informant, and if they were successful in finding her, defense counsel would be given any information they could obtain as to where she could be found. They also agreed to give defense counsel a photograph of her. The only means the officers had of finding her was by watching for her on the streets, where she was usually found in the company of persons engaged in narcotic activities. The officers did locate her, interviewed her and recorded the interview. They informed defense counsel of the interview and also of her address at that time. When the trial was reconvened on April 11th, counsel stated the investigators of

the Public Defender's Office had been unable to locate the informant. The trial was again continued to April 30th but the informant had not been located. The recording of the interview was placed in evidence. It has been transcribed and is found in the reporter's transcript. In the interview the informant discussed with the officers cases of other persons engaged in narcotic traffic in which she had furnished information upon which arrests had been made. Her information was shown to have been reliable. Defendant's objection was overruled and the exhibits which had been identified were received in evidence. In view of the testimony of the officers and the statements made in the interview by the informant it is doubtful that the public defender would have offered her as a witness if she had been willing to contradict the testimony of the officers and her own recorded statements. He would have known that her denials would have been disbelieved by the court. The court was exceedingly indulgent in giving defendant an opportunity to obtain the testimony of Mary Lopez.

When the officers entered the house and made the arrests they were fortified by the direct and positive information they had received from Olivia as well as by that which they had received from Mary Lopez. They had probable cause to arrest the defendant and search the premises. The record clearly supports the trial judge in his refusal to reject the narcotic evidence.

The judgment is affirmed.